# Exhibit A

22STCV20582
Electronically FILED by Superior Court of California, County of Los Angeles on 06/23/2022 05:06 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THRIVE MARKET TECHNOLOGIES, INC., and DOES 1-10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DEBRA SHAW, and DIANE VARELA, individually and on behalf of all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse <br><br> 111 N Hill Street <br> Los Angeles, CA 90012 | **CASE NUMBER:** <br> *(Número del Caso):* <br><br> 22STCV20582 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Todd M. Friedman, Adrian R Bacon 21031 Ventura Blvd., Ste. 340 Woodland Hills, CA 91364, 323-306-4234

| DATE: 06/23/2022 <br> *(Fecha)* | Sherri R. Carter Executive Officer / Clerk of Court <br> Clerk, by _____ G. Carini _____ , Deputy <br> *(Secretario)* _____ *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **Thrive Market Technologies, Inc.**

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> *www.courtinfo.ca.gov* <br> American LegalNet, Inc. <br> www.FormsWorkflow.com |

22STCV20582

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Carolyn Kuhl

Electronically FILED by Superior Court of California, County of Los Angeles on 06/23/2022 05:06 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

Zachary Crosner (SBN 272295)
Blake Jones (SBN 211221)
Chad Saunders (SBN 257810)
CROSNER LEGAL, P.C.
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Phone: 855-976-9228
zach@crosnerlegal.com
blake@crosnerlegal.com
chad@crosnerlegal.com

*Attorneys for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES
## UNLIMITED JURISDICTION

| | |
|---|---|
| DEBRA SHAW, and DIANE VARELA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THRIVE MARKET TECHNOLOGIES, INC., and DOES 1-10,<br><br>Defendant(s). | Case No. 22STCV20582<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Amount to Exceed $25,000)**<br><br>1.  Violations of Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.;*<br>2.  Violations of California Business and Professions Code § 17200, *et seq.;*<br>3.  Violations of California Business and Professions code § 17600, *et seq.;* |

Plaintiffs DEBRA SHAW and DIANE VARELA ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendant THRIVE MARKET TECHNOLOGIES, INC. upon information and belief based upon personal knowledge:

**INTRODUCTION**

1.    Plaintiffs' Class Action Complaint is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA") and the California Automatic Purchase Renewal Statute Cal. Bus. & Prof. Code § 17600, et seq. ("CAPRS").

2.    Plaintiffs, individually, and on behalf of all others similarly situated, bring this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant debiting Plaintiffs' and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiffs' and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).  Additionally, Defendant enrolls consumers in a 30-day free trial Membership which automatically renews into a paid subscription Membership without providing the "clear and conspicuous" disclosures mandated by California law, and posts charges to consumers' credit or debit cards for purported membership charges without first obtaining the consumers' affirmative consent to an agreement containing the requisite clear and conspicuous disclosures. As such, Defendant failed to properly inform consumers of its autorenewal terms, thereby violating Cal. Bus. & Prof. Code § 17600 *et. seq.*  Defendant fails to clearly and conspicuously disclose the terms of its autorenewal and additionally conditions its purchase on an illegal "negative option" as defined by 15 U.S.C. § 8403.

3.    Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter in that Defendant routinely transacts business in Los Angeles County.

5.      Venue in this Court is proper pursuant to Code of Civil Procedure Section 395 and 395.5, Business & Professions Code § 17203, 17204, and Civil Code §1780(c) because Defendant maintains its principal place of business in Los Angeles County.

## PARTIES

6.      Plaintiff, DEBRA SHAW ("Shaw"), is a natural person residing in Riverside County in the state of California, and is a "consumer" as defined by 15 U.S.C. §1693a(6) and a "person" as defined by Cal. Bus. & Prof. Code § 17201.

7.      Plaintiff, DIANE VARELA ("Varela"), is a natural person residing in Riverside County in the state of California, and is a "consumer" as defined by 15 U.S.C. . §1693a(6) and a "person" as defined by Cal. Bus. & Prof. Code § 17201.

8.      Plaintiffs Shaw and Varela will hereinafter be collectively referred to as "Plaintiffs."

9.      At all relevant times herein, Defendant, THRIVE MARKET TECHNOLOGIES, INC. ("Defendant"), was a Delaware company with its principal place of business in Los Angeles, California, engaged in the business of selling grocery items to consumers, including those in California such as Plaintiff.

10.     The above-named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11.     Plaintiffs are informed and believe that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiffs are informed and believe that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

### GENERAL FACTUAL ALLEGATIONS

12.     Defendant is an online marketplace that sells grocery items to consumers, such as Plaintiffs, through its website thrivemarket.com, as well as its mobile app.

13.     In order to purchase grocery items from Defendant, consumers must purchase a Membership with Defendant. Defendant offers either a monthly recurring membership, or an annual membership. After enrolling a consumer in a Free Trial Membership, Defendant post charges to the consumer's credit or debit card in the amount of $9.95 each and every month, or an annual charge of $59.95, until the Membership is cancelled.

14.     When consumers who do not have a Membership attempt to purchase products from Defendant's website or mobile app, Defendant automatically enrolls them in a "FREE 30 Day Trial Membership," which will automatically renew after 30 days into a paid Membership.

15.     Additionally, Defendant also charges to the consumer's credit or debit card an amount of the specific item(s) they purchase within Defendant's online marketplace on a recurring, monthly basis, until the recurring purchase of these items are each cancelled by the consumer. The charges for the specific item(s) purchased by the consumer are in addition to and separate from the monthly or annual Membership charge.

16.     However, Defendants fail to provide clear and conspicuous disclosures mandated by California law, resulting in unauthorized charges for Defendant's renewing membership and/or recurring charges for specific item(s) from Defendant's marketplace.

17.     Many consumers report that they were enrolled in Defendant's Membership program when attempting to make a purchase of one or more items from Defendant's online

marketplace, even though the consumers did not submit a request to be enrolled. Additionally, many consumers also complain that they found it very difficult to cancel Defendant's Membership and were unable to do so prior to being charged for another automatic renewal payment. For example, Defendant has a rating of 1.08/5 on the Better Business Bureau website and 133 Customer Complaints[1], many of which relate to consumers unknowingly being enrolled into Defendant's Membership and being charged the subscription fee without their authorization, and/or consumers' inability to timely cancel their Membership:

**Complaint Type:** Billing/Collection Issues

05/31/2022

I was billed for an annual membership to this merchant (which I will never use) and I never signed up for the service. I saw the charge on my statement and asked for a refund since I had not authorized the charge. I was told that this was impossible and then given a small discount on this membership (that I will never use). I believe that this should have been a simple transaction to correct an error and it was handled poorly

**Complaint Type:** Problems with Product/Service

05/18/2022

They renewed my subscription and made it difficult to cancel it. A customer service rep said they would give me a reduced discount and refund partially but never did. I want a full refund.

**Complaint Type:** Billing/Collection Issues

**Status:** Answered

05/12/2022

---

[1] https://www.bbb.org/us/ca/los-angeles/profile/online-retailer/thrive-market-inc-1216-357369/complaints

I started a free membership back in 2020 when they gave out gift cards at the start of the pandemic. You had to add credit card information in order to use the card. Then after I used the card, I canceled my membership. But then April 2021 they charged for the membership through my PayPal. I contacted both them and PayPal to get refunded and thought that was the end of the problem. But then today I just got a notification that I was charged yet again for their membership that I canceled 2 years ago and haven't touched since then. I look through my emails and it says in the 26th of April 2022 THEY restarted my membership without my permission.

**Complaint Type:** Billing/Collection Issues

04/08/2022

I heard great things about Thrive and decided I wanted to look into their products for my autoimmune disease. Upon going to the website, you cannot view their products without signing up for a subscription. They give two options, a yearly sub and a monthly sub. I chose monthly. Upon looking through the website I determined they did not offer the products I was in search for so I wanted to cancel my membership. I went through the chat on the website and was advised because I chose the Monthly option, I was not eligible for a refund. They cancelled my "renewal" date and indicated I would still be charged for simply browsing their products. The chat agent sent me a screenshot of a pop up that is supposed to display to warn you that it's not refundable and to switch to annual membership for a 30 day risk free trial. I never received this pop up at all. I suspect it's because I was sent an advertising email to "complete my membership" and all I had to do was log in with the email and password I had previously created. I had created these a few weeks ago and then completely set everything aside and forgot that I had started the sign up process. So, I never got this pop up and chose the monthly option. After the chat support couldn't help me I called customer service and they said my refund could not be completed, they would not allow me to speak with a supervisor

and would only "escalate" my issue. I let them know I would be filing a complaint at the unethical, unprofessional, and unreasonable concept to charge someone a $9.99 fee to essentially browse their website and not get a refund if they did not order anything because the company did not offer the products I was searching for.

**Complaint Type:** Problems with Product/Service
**Status:** Answered

04/07/2022
On Feb 20 2022 I was looking for a place that sold whole foods online. I came across this Thrive Market place and I wanted to see what they were about and what kind of products they sold. Before I could access the website I had to give them my information and credit card number. They promised I would not be charged for a membership fee until I made my first purchase. I didnt make any purchases and didnt even submit my information and was charged $60 anyways. On Feb 28th 2022, I called the 800 number and had to wait over an hour until I finally got some one on the phone. He assured me that I would have my money back in 3 to 5 days. Its March 7th and I still dont have my money back. This place lied to me and took my money without my permission. I tried to call again today and was disconnected after about 30 minutes. I was going to call and leave a call back number but now it wont even let me do that. I have been waiting on the chat line since 1:21 it is now 2:02 and still no one has came to chat with me. Im not sure where this place is in California. All I have is a phone number. its *********. I'm afraid to go to their website in fear of them taking even more of my money without my permission. The charges were $59.95 for a membership I did not want and cannot use. Please warn other consumers of these pirates. They have had my money for 15 days. I dont have any receipts, just the transaction on my pay pay account. They know who I

am. They Identify you by your email address. Please help me get my money back.

Thanks

**Complaint Type:** Billing/Collection Issues

03/28/2022

I placed an order with Thrive Market at the beginning of 2022. I was totally unaware that I had signed up for a recurring membership fee until I was charged $59 this morning. I had never wanted a membership so I immediately called customer service to ask for a refund but was told the best they could do was offer me $20 and cancel the membership to avoid future charges. I'm disgusted that Throve Market practices stealth charging like this; I am very careful about signing up for memberships and free trial periods but this one really snuck under the radar. The extra $39 that Thrive Market is refusing to refund is a lot of money to me right now and I'm extremely upset about it.

**Complaint Type:** Delivery Issues

03/28/2022

I joined thrive thinking I would be able to save money on groceries and knowing they have a 30 day cancellation policy. They don't let you browse their options before you join. After realizing it won't be worth it for me to pay for this monthly subscription (I already paid $59 for the year), I have been trying to cancel for 10 days now. The website says you need to cancel by chatting with an associate but I can't for days now get anyone to help me. I've called their number and I get a recorded message and hung up on and I tried to text with them and no one responds. I just want to cancel my account, get a refund and move on with my life. This seems like a fraud that you can't cancel and no one helps you.

**Complaint Type:** Delivery Issues

03/28/2022

Signed up for membership and changed my mind after viewing thrive market web site they are refusing to refund my membership fee less than 2 hours later I never used it since I had problems navigating their site .

**Complaint Type:** Delivery Issues

03/28/2022

Created an order for 2 items at the end of January, Today i see a $60 charge on my statement. I contacted support to try and resolve as i do not wish to use their service.. The representative informed be that because i placed an order i was automatically signed up for a subscription service and that if i wanted to cancel and get a refund the window closed on march 1st, However they didnt charge my card until march 3rd.. Makes no sense. I said that this wasnt right of them do be fooling people like that and its a scam to tease people with a refund window before they ever charge the card.. The representative quickly tried to end the chat after i kindly expressed that i would like a refund and i do not see that it is fair that they are doing this to unsuspecting customers.. I said that i do NOT wish to use their services again and considering i hadnt utilized it but one time when i first "signed up" i feel that me saying that is pretty clear. I told the representative that i will be filing a dispute with the credit card company, and they said okay i will be ending the chat now. These people do not care about their customers and have no empathy when they are the ones fooling people into a service. I have since filed a dispute and if it were to be accepted i will not need further help, however it still doesnt seem fair to the consumer.

**Complaint Type:** Delivery Issues

03/28/2022

On January 15th I bought 3 small bottles of rosemary oil for about $18. I only bought from this site (which I had never heard of before) because my ******* was out of it and

I was trying to help my hair re-grow. One month later, I notice a charge for $59.95 and chatted with customer service to figure out what it was for. If I intentionally signed up for a membership, I would have made more purchases and would not have asked for my account to be deleted. I definitely feel taken advantage of. I did not see anywhere on their site while checking out that I was signing up to be a member. I would have never purchased anything. I ended up emailing the company and they refunded $20, but I would like the rest of my $39.95 back. I feel like I donated money to this company and I truly can't afford to lose any money. Please refund the other $39.95. And delete my account. Thanks

**Complaint Type:** Delivery Issues

03/22/2022

I purchased two items online from Thrive Market. After they were purchased, I received notification of being charge $59.95 for a yearly subscription to Thrive Market. I did not authorize this payment or agree to have a yearly subscription. I called Thrive Market customer service immediately and asked for a refund, which was denied. This is a scam. I will never purchase from Thrive Market again. Sadly, after reviewing reviews and the BBB, this company is listed as a scam and for buyers to be aware of this scam business.

**Complaint Type:** Delivery Issues

03/22/2022

In January of 2022 I canceled my account, this was difficulty because they do not allow you to cancel yourself and require you to 'chat' with an automated message system and select from misleading options. I finally was connected with a person and told them I wanted to cancel and my reason (I cannot afford their service anymore). They told me they had canceled my account. A month later I am informed I am getting autoship. I try to cancel again. I email. No response. This time I call. I am put on hold for over an

hour. I text and they say there is no one to respond. I try to delete my credit card information but this is not an option in there system. It seems I am going to be unable to cancel this membership despite my persistent attempts to communicate my wish to cancel. My husband also has an account. He is unable to cancel also.

18. In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code, § 17600 et seq. (the California Automatic Renewal Law or "ARL").) SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

(See Exhibit 16 at p. 19.)

19. The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

(See Exhibit 17 at p. 23.)

20. The ARL seeks to ensure that, before there can be a legally-binding automatic

renewal or continuous service arrangement, there must first be adequate disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, Bus. & Prof. Code § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. (Bus. & Prof. Code § 17602(a)(1).) For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (Bus. & Prof. Code, § 17601(c).) In the case of an audio disclosure, 'clear and conspicuous' means in a volume and cadence sufficient to be readily audible and understandable." (Id.) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (a) that the subscription or purchasing agreement will continue until the consumer cancels; (b) the description of the cancellation policy that applies to the offer; (c) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (d) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (e) the minimum purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

(2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer

terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code § 17602(a)(2).)

(3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code § 17602(a)(3).) If the offer includes a free trial, the business must also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services. (Ibid.) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation.

21.     Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof. Code § 17535. (Bus. & Prof. Code, § 17604, subd. (a).)

22.     Additionally, the Federal Trade Commission ("FTC" or "Commission") issues their Policy Statement to provide guidance regarding its enforcement of various statutes and FTC regulations addressing negative option marketing and operating. Typically, negative option arrangements include, but are not limited to, automatic renewals, continuity plans, free-to-pay or fee-to-pay conversions, and prenotification plans. Automatic renewals allow sellers to unilaterally renew consumers' subscriptions when they expire, unless consumers affirmatively cancel their subscriptions by a certain date. Free trial marketing (e.g., free-to-pay conversions) provides consumers the opportunity to receive goods or services for free (or at a nominal fee) for a trial period.

23.     Over the years, unfair or deceptive negative option practices have remained a persistent source of consumer harm, often saddling shoppers with recurring payments for products and services they did not intend to purchase or did not want to continue to purchase. These matters involve a range of deceptive or unfair practices, including inadequate disclosures of hidden charges in ostensibly "free" offers and other products or services, enrollment without consumer consent, and inadequate or overly burdensome cancellation and refund procedures. In its guidance and cases, the FTC has highlighted four basic Section 5 requirements that negative option marketing must follow to comply with Section:

(1) First, marketers must clearly and conspicuously disclose the material terms of a negative option offer including, at a minimum, key terms such as the existence of the negative option offer, the offer's total cost, and how to cancel the offer;

(2) Second, sellers must disclose these material terms before consumers agree to the Purchase;

(3) Third, marketers must obtain consumers' express informed consent to such offers; and,

(4) Fourth, marketers must not erect unreasonable barriers to cancellation or impede the effective operation of promised cancellation procedures, and must honor cancellation requests that comply with such procedures.

24. An example of Defendant's violations of the ARL and EFTA can be illustrated by examining the order flow for consumers who purchase items from Defendant's online marketplace using mobile phones.

25. Notably, by 2021, 53.9% of all US retail e-commerce is expected to be generated via m-commerce.[2]

26.     While consumers can go to Defendant's website directly to purchase items from its marketplace, many consumers arrive at Defendant's website through Defendant's online

---

[2] https://www.statista.com/statistics/249863/us-mobile-commerce-as-percentage-of-total-retail-sales/

advertisements, including but not limited to Google, Google Shopping Facebook or Instagram advertisements for specific items sold in Defendant's online marketplace, as shown in Exhibit 1 below.

27.     When a consumer enters Defendant's website, he or she can add specific item(s) to their online shopping cart, as shown in Exhibit 2 below. This item purchase page does not include a disclosure of any of the automatic renewal terms required under California law.

28.     Consumers can then click on the shopping cart icon which will take them to Defendant's shopping cart page, as shown in Exhibits 3 and 4 below. This shopping purchase page does not include a disclosure of any of the automatic renewal terms required under California law.

29.     From the shopping cart page, consumers can click on the "Checkout" and/or "Place Order" button, at which point Defendant serves multiple pop-ups on this page in order to upsell additional products and "free gifts" which the user can bypass by clicking on the "Continue to Checkout" button which will take the consumer to the checkout page on Defendant's website.

30.     The checkout page, as shown in Exhibits 5, 6 and 7 below, requires the consumer to enter his or her name, address and payment information. This checkout page also displays an itemized description of the charges to the consumer, including the (1) subtotal, (2) any applicable discount, (3) any applicable grocery shipping charge, (4) any applicable "savings donation", any applicable "worker health & safety and taxes," and the (5) total, which is highlighted in a bold font. The subtotal and total only include the cost of the specific item(s) added by the consumer to their shopping cart for purchase. The subtotal and total do not in any way disclose the cost of Defendant's monthly or annual membership. Additionally, none of the itemized charges to the consumer as enumerated above include the $9.95 monthly or $59.95 annual membership fee. Underneath the itemized description of the charges, the checkout page displays a "Savings guaranteed" section that is set in a box and highlighted bright green. This Savings guaranteed box contains an amount that the consumer is "saving" on his or her purchase. This Savings guaranteed box does not in any way describe the annual or monthly membership fee that will be

1    charged to the consumer.

2       31.    Below the Savings guaranteed green box there is a sentence stating that "annual membership auto renews each year at the then-current membership price." This sentence is not clear and conspicuous under California ARL statute because the font size is smaller or at best the same size and the same color, or an even lighter grey color, as the surrounding text and is not set off by symbols or other marks in any way that clearly calls attention to the language. To the contrary, there are other elements that are set off or otherwise highlighted and which call attention away from this sentence. These other elements include the above-described Savings Guaranteed green box, but also another even larger green box containing an upsell limited offer and an orange button to "Place Order" that follows mobile users down the page as they scroll. These bright green and orange scroll boxes are significantly larger than the auto renew sentence described in this paragraph, and certainly large enough to easily cover the auto renew sentence.

      32.    Additionally, this auto renewal sentence is not always within temporal proximity to the Place Order button because the Place Order button can be selected by the consumer on before scrolling down to the auto renew sentence described in this paragraph.

      33.    As a result, consumers do not affirmatively consent to the renewal terms of Defendant's Membership or the recurring purchase of specific items.

      34.    Additionally, consumers are never provided with an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer.

### PLAINTIFF VARELA'S FACTS

      35.    In or around February of 2020, Plaintiff Varela purchased several grocery items from Defendant's online marketplace.

      36.    When a consumer purchases merchandise through Defendant's mobile app, the first step of the order flow is for the consumer to respond to multiple questions about their

purchase preferences in a quiz format. This Quiz page does not include a disclosure of any of the automatic renewal terms required under California law.

37.     Next, the consumer is prompted to select from "free gifts" which includes a multitude of images and descriptions of products that consume the entire screen. This Free Gifts page does not include a disclosure of any of the automatic renewal terms required under California law.

38.     After the user makes these selections, the consumer is then required to create an account in order to "save your preferences" by inputting their email address and a password. This Account page does not include a disclosure of any of the automatic renewal terms required under California law.

39.     Once a consumer has created an account, the user is prompted to select a plan that is "risk-free for 30 days to get your personalized picks" where the user can select between an annual and monthly plan. Upon selecting a plan, the consumer is required to input their payment details on the page. This Payments page does not include a disclosure of any of the automatic renewal terms required under California law.

40.     The final page is for the consumer to confirm payment. This page contains disclaimer language stating that "you'll be charged $9.95 every 30 days plus any applicable taxes for your 1 month membership, which will auto-renew at the then-current membership fee." This disclaimer language is not clear and conspicuous under California ARL statute because the font size is smaller or at best the same size and the same color as the surrounding text and is not set off by symbols or other marks in any way that clearly calls attention to the language. To the contrary, there are other elements that are set off or otherwise highlighted that call attention away from this disclaimer language, such as a highlighted green box offering free gifts and a bright white box with image icons describing free gifts, free shipping and other benefits.

41.     Additionally, Defendant did not provide an acknowledgement that included the automatic renewal or continuous service offer terms, cancellation policy, and information

1   regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. &
2   Prof. Code § 17602(a)(3).)

3       42.     At the time of purchasing, Plaintiff Varela was unaware that Defendant required
4   a membership to purchase from its online marketplace, or that Defendant even charged any fees
5   for the use of its app.

6       43.     In reality, without her knowledge, Defendant had enrolled Plaintiff Varela in its
7   monthly membership subscription for $9.95 a month.

8       44.     A few months later, when she discovered that Defendant had been charging her
9   for a monthly membership, Plaintiff Varela attempted to cancel her membership through
10  Defendant's app.
11

12      45.     Plaintiff Varela's initial attempt to cancel her membership was not honored by
13  Defendant, and as a result Plaintiff Varela was charged for an additional month of membership
14  at $9.95.

15                           **PLAINTIFF SHAW'S FACTS**

16      46.     In or around May of 2021, Plaintiff Shaw visited Defendant's website where she
17  purchased a monthly subscription from Defendant for $9.95 each month.

18      47.     In September of 2021, Plaintiff Shaw decided she wanted to cancel her
19  subscription to Defendant's service. As such, she emailed Defendant requesting to cancel her
20  subscription.

21      48.     When she did not hear back from Defendant confirming her cancellation, Plaintiff
22  tried to call Defendant's customer service department. Plaintiff was not able to speak with a
23  member of Defendant's customer service department.

24      49.     Defendant did not honor Plaintiff Shaw's cancellation request in September of
25  2021, and instead charged her for an additional $9.95 for a month of membership before
26  cancelling her membership in October of 2021.

27      50.     Defendant did not send any correspondence to Plaintiffs confirming the written
28  terms of the auto-withdrawal or further explanation.

51.     Defendant's membership offer is what is known as a negative option by the FTC, which is defined as "an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 CFR § 310.2.

52.     Pursuant to 15 U.S. Code § 8403, it is unlawful to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature unless the "text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information," "obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction;" and "provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account."

53.     Defendant's negative option sales scheme failed to satisfy all three prongs, any of which is fatal and unlawful.  The only text that disclosed any material terms of the transaction was in significantly smaller text below the form obtaining the consumer's billing information— and after the transmission button.  Accordingly, Defendant failed to obtain a consumer's express informed consent to make such charges.  Further, while Defendant accepted transactions through the Internet, Defendant required cancellation to occur telephonically, which is not a simple mechanism.

54.     Because Defendant failed to conspicuously disclose all material terms, it also failed to obtain Plaintiffs' express informed consent for the recurring electronic fund transfers it thereafter made.

55.     Further, Defendant did not provide to Plaintiffs, nor did Plaintiffs execute, any written or electronic writing memorializing or authorizing these recurring or automatic payments.

56.     Plaintiffs allege such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited

to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

57.     Plaintiffs allege such activity to be in violation of California's Automatic Purchase Renewal Statute Cal. Bus. & Prof. Code § 17600, et seq. ("CAPRS"), and its surrounding regulations.

58.     At all times relevant, Defendant made and continues to make automatic renewal offers and continuous service offers, as those terms are defined by Cal. Bus. & Prof. Code § 17600, et seq. ("California's Automatic Purchase Renewal Statute") to Plaintiffs and other consumers similarly situated.

59.     At the time Plaintiffs purchased the services, Defendant failed to present Defendant's automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner, as defined by California's Automatic Purchase Renewal Statute, before the subscription or purchasing agreement was fulfilled, and in visual or temporal proximity to Defendant's request for consent to the offer.

60.     At the time Plaintiffs purchased the services, Defendant charged Plaintiffs for an automatic renewal offer without first obtaining Plaintiffs' affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

61.     Further, Defendant never provided Plaintiffs with information regarding how to cancel in a manner that was capable of being retained by Plaintiffs.

62.     On information and belief, Plaintiffs allege that Defendant's policy and practice is to engage in illegal and deceptive negative option sales to unfairly surprise consumers with large recurring transactions as part of a "free trial" scam.

63.     At the time Plaintiffs purchased Defendant's "free trial," Plaintiffs were subjected to Defendant's unlawful policies and/or practices, as set forth herein, in violation of Cal. Bus. & Prof. Code § 17600, et seq.

64.     The material circumstances surrounding this experience by Plaintiffs were the same, or nearly the same, as the other class members Plaintiffs propose to represent, and Plaintiffs and all putative class members were required to pay, and did pay, money for the services

marketed and sold by Defendant.

## CLASS ACTION ALLEGATIONS

65.   Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of two proposed classes (jointly "The Classes"). The first Class (hereafter "The EFTA Class") defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendant without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

66.   The second Class (hereafter "the CAPRS Class") is defined as follows:

> All persons in California whose bank accounts were debited on a reoccurring basis by Defendant without Defendant providing clear and conspicuous notice of the recurring charges, including information on how to cancel Defendant's services within the four years prior to the filing of this Complaint.

67.   Plaintiffs represent, and are members of The EFTA Class, consisting of all persons within the United States whose bank account was debited on a recurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

68.   Plaintiffs represent, and are members of The CAPRS Class, consisting of all persons in California whose bank accounts were debited on a reoccurring basis by Defendant without Defendant providing clear and conspicuous notice of the charges, including information on how to cancel Defendant's services within the four years prior to the filing of this Complaint.

69.   Defendant, its employees and agents are excluded from The Classes. Plaintiffs do not know the number of members in The Classes, but believe the Classes members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

70.   The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of The Classes members are unknown to

Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe and thereon allege that The Classes includes thousands of members. Plaintiffs allege that The Classes members may be ascertained by the records maintained by Defendant.

71.    This suit is properly maintainable as a class action because the Classes are so numerous that joinder of the Classes members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.

72.    There are questions of law and fact common to the EFTA Class affecting the parties to be represented.  The questions of law and fact to the EFTA Class predominate over questions which may affect individual EFTA Class members and include, but are not necessarily limited to, the following:

    a.   The members of the Class were not provided with, nor did they execute, written agreements memorializing the automatic or recurring electronic payments.

    b.   Defendant did not request, nor did it provide, Class members with written agreements memorializing the automatic or recurring electronic payments.

    c.   The members of the Class did not provide either a written ("wet") or otherwise electronic signature authorizing the automatic or recurring electronic payments.

    d.   Despite not providing written or electronic authorization for payments to be drawn from their accounts, Defendant took unauthorized payments from Class members' accounts.

73.    There are questions of law and fact common to the CAPRS Class affecting the parties to be represented.  The questions of law and fact to the CAPRS Class predominate over questions which may affect individual CAPRS Class members and include, but are not necessarily limited to, the following:

CLASS ACTION COMPLAINT
-22-

a. Whether Defendant failed to clearly and conspicuously disclose the terms of its auto-renewal charges prior to making such charges to Class members' cards;

b. Whether Defendant failed to obtain informed express consent for such charges;

c. Whether Defendant filed to provide a simple method by which Class members could cancel their auto-withdrawals; and

d. Whether Defendant failed to provide information to Plaintiff and Class Members regarding how to cancel in a manner that is capable of being retained by the consumer.

74. As people whose bank accounts were debited on a reoccurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, Plaintiffs are asserting claims that are typical of The Classes.

75. Plaintiffs will fairly and adequately protect the interests of the members of The Classes. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

76. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Classes members is impracticable. Even if every Classes member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

77. The prosecution of separate actions by individual Classes members would create

a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Classes members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Classes members to protect their interests.

78.     Defendant has acted or refused to act in respects generally applicable to The Classes, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

**COUNT I:**
**VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT**
**ON BEHALF OF THE EFTA CLASS**

79.     Plaintiffs reincorporate by reference all of the preceding paragraphs.

80.     Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

81.     Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

82.     Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

83.     Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

84.     Defendant debited Plaintiffs' and also the putative Class members' bank accounts

on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers for the rates charged from Plaintiffs' and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

85.     Defendant has debited Plaintiffs' and also the putative Class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or the putative Class members for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

## COUNT II:
### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17600
### INDIVIDUALLY AND ON BEHALF OF THE CARPS CLASS

86.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

87.     California Business & Professions Code § 17602 prohibits a defendant from failing to present "the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled."

88.     Moreover, it is unlawful to "Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement."

89.     By engaging in the conduct as described above, Defendant has violated the prohibitions placed on business making automatic renewal offers by California Business & Professions Code § 17602.

## COUNT III:
### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200
### INDIVIDUALLY AND ON BEHALF OF THE CAPRS CLASS

90.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

91.     Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

<u>UNFAIR</u>

92.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiffs reserve the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

93.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

94.     Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiffs and members of the CAPRS Class. Plaintiffs and members of the Class have suffered injury in fact due to Defendant's charging auto-renewal charges without clearly and conspicuously disclosing such charges or obtaining consent.  Thus, Defendant's conduct has caused substantial injury to Plaintiffs and the members of the CAPRS Class.

95.     Moreover, Defendant's conduct as alleged herein solely benefits Defendant while

providing no benefit of any kind to any consumer.  Such deception utilized by Defendant converted large sums of money from Plaintiffs and CAPRS Class members without clear and conspicuous notice or obtaining express informed consent. This systematic scheme is tantamount to theft.  Thus, the injury suffered by Plaintiffs and the members of the CAPRS Class is not outweighed by any countervailing benefits to consumers.

96.      Finally, the injury suffered by Plaintiffs and members of the CAPRS Class is not an injury that these consumers could reasonably have avoided.  Defendant misappropriated funds from Plaintiffs and other consumers, and these consumers suffered injury in fact due to Defendant's unexpected auto-withdrawals.  As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiffs and the CAPRS Class members. Therefore, the injury suffered by Plaintiffs and members of the CAPRS Class is not an injury which these consumers could reasonably have avoided.

97.      Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### FRAUDULENT

98.      California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

99.      The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

100.     Here, not only were Plaintiffs and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Defendant had a duty to clearly and conspicuously disclose its automatic renewal terms, failed to do so, and misappropriated significant sums of money from Plaintiffs and CAPRS Class members, who reasonably relied on Defendant's advertising practices which emphasized the

---

CLASS ACTION COMPLAINT
-27-

"free trial" nature of the transaction, causing considerable actual damages.

101.    Plaintiffs' reliance is reasonable due to the unequal bargaining powers of Defendant and Plaintiffs. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

102.    Defendant's practices is an unfair, unlawful and fraudulent bait and switch scheme.

103.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

<u>UNLAWFUL</u>

104.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful...business act or practice."

105.    As explained above, Defendant deceived Plaintiffs and other Class Members by deducting unauthorized sums from their accounts under a negative option scheme.

106.    As explained above, such conduct constitutes an unlawful act under Cal. Bus. & Prof. Code § 17600, et seq., 15 U.S. Code § 8403, and EFTA.

107.    Defendant's acts are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq..

108.    Defendant's conduct caused and continues to cause economic harm to Plaintiff and CAPRS Class Members.

**TRIAL BY JURY**

109.    Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demands, a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, DEBRA SHAW, and DIANE VARELA individually, and on behalf of all others similarly situated, respectfully request judgment be entered against Defendant, for the following:

c.    That this action be certified as a class action on behalf of The Classes and

Plaintiffs be appointed as the representative of The Classes;

f.   Statutory damages of $1,000.00, per Class Member, pursuant to the Electronic Fund Transfer Act, §916(a)(2)(A);

g.   Actual damages;

h.   Restitution of the funds improperly obtained by Defendant;

i.   Any and all statutory enhanced damages;

j.   All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

k.   For equitable and injunctive and pursuant to California Business and Professions Code § 17203 and Cal. Civ. C. § 1780 et. al.;

l.   For prejudgment interest at the legal rate; and

m.   Any other relief this Honorable Court deems appropriate.

Respectfully submitted this 23rd Day of June, 2022.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:   *Todd M. Friedman*

Todd M. Friedman
Law Offices of Todd M. Friedman
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

9:51

Ads · Shop jelly.thrive market

  

Gluten-Free Organic Fruit...
**$3.49**
Thrive Market
$2.44 with code
Flavor
Strawberry
View more

Crofters Organic Premium Fruit...
**$6.29**
Thrive Market
$4.40 with code
Type
Jam
View more

Thrive Organi
**$3.49**
Thrive
$2.44
View

https://thrivemarket.com › jam-jellie. .

Buy Jam, Jellies & Preserves Online | Thrive Market

  

Buy jam, jellies & preserves online at Thrive Market. Save time and money and get the best healthy groceries delivered. Free shipping on most orders!

jelly.thribe market

# EXHIBIT 2

9:51

◂ Safari

THRIVE MARKET

ORGANIC
STRAWBERRY
FRUIT SPREAD

Organic

Thrive Market • . 3875

## Organic Strawberry Fruit Spread

10 oz glass jar · $0.35/oz

$3.14 ~~$5.49~~ 43% off

Add

Low-Price Promise: Find it cheaper elsewhere? We'll meet it

Ships within 24hrs. Learn More

# EXHIBIT 3

9:53
ORGANIC
STRAWBERRY
FRUIT SPREAD
Item added to grocery box!
Subtotal: $3.14
Add $21.86 to qualify for free shipping on this box
View Cart
Checkout
Members also love these
Thrive Market, Organic
Raspberry Fruit Spread
10 oz glass jar
$3.49 $5.49 36% off
Add
AA
thrivemarket.com

# EXHIBIT 4

9:53 ✈

THRIVE
— MARKET —

Secure Checkout    [ Place Order ]

**P PayPal**

Make this a gift order ⓘ

**Shipping address**

Full name

Address

Limited offer! Get $80 in FREE
groceries today! ⓘ                    ✕
Claim Gift

[ Place Order ]

ᴀA    🔒 thrivemarket.com    ↻

‹    ›    ⬆    📖    ⧉

CLASS ACTION COMPLAINT
-34-

# EXHIBIT 5

9:53

**Grocery Box (1 item)**

Ships within 24hrs Learn More

Thrive Market, Organic Strawberry Fruit Spread
10 oz glass jar
Qty: 1                                    $3.49

Annual membership auto renews each year at the then-current membership price.

By clicking "Place Order" you accept Thrive Market's Terms of Service and Privacy Policy.

Promo Code                              Applied
                                           ×

Gift Card

                                         Apply

**Need help?**

Limited offer! Get $80 in FREE groceries today! ⓘ          ×
Claim Gift

**Place Order**

🔒 thrivemarket.com

# EXHIBIT 6

10:01 ⏳                                    �📶 📶 🔋

Subtotal                                        $3.14

Discount (40% off your 1st order)              -$1.26

Grocery shipping                                $5.95

Savings donation                                $0.00

Worker health & safety ⓘ                        $1.95

Taxes                                           $0.00

**Total**                                       **$9.78**

Savings guaranteed ⓘ          You're saving $3.61

## Your Cart

**Grocery Box (1 item)**                         

🚛 Ships within 24hrs <u>Learn More</u>

    Thrive Market, Organic Strawberry Fruit
                         Spread
                         10 oz glass jar

Limited offer! Get $80 in FREE
groceries today! ⓘ                              ✕
Claim Gift

**Place Order**

ᴀA          🔒 thrivemarket.com          ↻

<   >              📤        📖        🗗

# EXHIBIT 7

10:06 

**Grocery Box (1 item)**

Ships within 24hrs Learn More

  Thrive Market, Organic Strawberry Fruit
Spread
10 oz glass jar

Qty: 1                                    $3.14

**Place Order**

Orders typically ship within 24-48 hrs once they
have been placed.

We'll notify you before your next shipment is
processed.

You can easily edit, cancel, or reschedule future
shipments at any time.

By clicking "Place Order" you accept Thrive Market's
Terms of Service and Privacy Policy. You are

**Limited offer! Get $80 in FREE
groceries today!**  ⓘ                    ✕
Claim Gift

Promo Code                              Applied

AA          🔒 thrivemarket.com          ↻

<          >          ⬆          📖          🗐